**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aboud and Aboud PC, | No. CV-21-00240-TUC-RCC |
| Appellant, | **ORDER** |
| v. | |
| Jeanette Cary, | |
| Appellee. | |

Appellant Aboud and Aboud, P.C. ("Appellant") appeals from a final judgment of the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"). In support, Appellant filed an Opening Brief on July 29, 2021. (Doc. 8.) Appellee Jeanette Cary ("Debtor") filed a Response Brief on August 30, 2021 (Doc. 12) and Appellant filed a Reply Brief on September 9, 2021 (Doc. 13). Oral argument was held on August 30, 2022.

**I.    Factual and Procedural Background**

Appellant is a law firm where attorney John Eli Aboud ("Aboud") practices domestic relations law. (Doc. 8 at 5.) On May 11, 2017, Debtor hired Aboud to represent her in post-decree enforcement proceedings against her ex-husband. (*Id.*) Over the course of this representation, Debtor incurred legal fees in the amount of $27,273 that she did not pay. (*Id.* at 8.)

On December 20, 2017, Aboud formally withdrew as counsel for Debtor. (*Id.* at 2.) The minute entry order also granted Aboud's request for an attorney's lien against any

judgment or proceeds that Debtor may obtain, which was also a provision of the initial fee agreement that Debtor signed upon retaining Aboud. (*Id.* at 2, 179.) The State Court instructed, "If there is a conflict as to that amount, [Debtor] is directed to review the terms of the retainer agreement and engage in arbitration to satisfy those disputes." (*Id.* at 2.)

Debtor hired new counsel, Erika Cossitt Volpiano, and, on September 13, 2018, Debtor and her ex-husband entered into a Divorce Stipulation pursuant to which he made six payments over the following three years totaling approximately $69,972.98. (Doc. 8 at 8.) The payments included $5,000 on August 29, 2018; $9,145 on October 24, 2018; $4,000 in child support arrears; $23,827.98 to Debtor's first mortgage loan; and $28,000 to Debtor's second mortgage loan. (*Id.*) It appears the first two payments went directly to Debtor's new attorney as legal fees, the third payment went directly to Debtor's adult children, and the last two payments went directly to the lenders. Aboud did not learn of this stipulation until later and did not receive any of this recovery despite his attorney's lien. (*Id.*)

In October 2018, Debtor initiated fee arbitration proceedings through the State Bar of Arizona to resolve her outstanding debt to Aboud. (*Id.* at 9.) In lieu of a hearing, the parties engaged in settlement negotiations and signed a Settlement Agreement on April 3, 2019. (*Id.*) The terms of the Settlement Agreement stated that Debtor would pay Aboud the principal sum of $27,000 with 12% simple annual interest to begin to accrue on May 1, 2019, which would be secured by a deed of trust on her home. (Doc. 11-18 at 26.) Debtor agreed to execute a note and deed of trust. (*Id.*) If Debtor sold or refinanced her home before January 31, 2020, the principal would be reduced to $18,000. (*Id.*) On April 4, 2019, Aboud sent the note and deed of trust to Debtor for her signature, but Debtor never executed the note and deed of trust. (Doc. 8 at 9.)

On May 2, 2019, Debtor filed for bankruptcy. (*Id.*) She listed Aboud as an unsecured creditor with a debt in the amount of $27,273. (*Id.*) Aboud then filed a three-count complaint with the Bankruptcy Court seeking to have his debt exempted from discharge. (*Id.*) He claimed that his debt was exempt because (1) Debtor incurred the debt within 90 days of the petition, making it exempt under 11 U.S.C. § 523(a)(2)(C)(i)(I); (2) Debtor

engaged in actual fraud under 11 U.S.C. § 523(a)(2)(A); and (3) Debtor willfully and maliciously converted Aboud's funds under § 523(a)(6). (Doc. 11-1 at 4–5.)

On December 16, 2020, the Bankruptcy Court held a bench trial on Aboud's claims. (Doc. 8 at 9.) Aboud first argued that Debtor incurred the $27,000 debt less than a month before filing for bankruptcy by signing the Settlement Agreement. (*See, e.g.*, Doc. 11-17 at 4.) He further argued that Debtor incurred the debt through actual fraud because she intentionally diverted funds from her ex-husband directly to creditors to avoid Aboud's attorney's lien. (*Id.* at 6.) Aboud asserted he only discovered the Divorce Stipulation by chance when he examined the docket. (*Id.* at 23.) Aboud claimed he was damaged in the amount of $27,000. (*Id.* at 8.) Finally, Aboud alleged that Debtor caused willful and malicious injury by intentionally avoiding his attorney's lien and engaging in arbitration just before filing for bankruptcy. (*Id.*)

Debtor testified that she told Aboud from the beginning of the representation that she was in a difficult financial situation and would not be able to pay his fees if she did not recover anything from her ex-husband. (*Id.* at 113, 142, 180.) She claimed that the stipulation with her ex-husband was a result of negotiations but that she did not draft the terms of the payments. (*Id.* at 131.) Indeed, Debtor asserted it was her ex-husband's idea to make direct payments on the mortgage. (*Id.*) Debtor disagreed that she owed Aboud $27,273 in fees because she was dissatisfied with his representation, but she initiated arbitration proceedings to resolve the fee dispute and "come up with a fair amount for [her] to pay . . . ." (*Id.* at 119, 173.) She claimed she entered into the arbitration "[t]o conclude everything that was going on" rather than to "mislead or defraud Mr. Aboud." (*Id.* at 154.) Debtor testified that she wanted a hearing and felt pressured into the settlement negotiations that happened instead. (*Id.* at 119–21.) Debtor, who was not represented by counsel at the arbitration and settlement, testified that she was "scared" and "a nervous wreck." (*Id.* at 121, 153, 167.) Debtor testified that she did not have time to think about the Settlement Agreement. (*Id.* at 155.) She said that, after signing, she immediately felt uncomfortable with the Settlement Agreement and expressed these concerns to the arbitrator within three days. (*Id.* at 153–54, 167.) After the fee arbitration, Debtor consulted with a bankruptcy

lawyer and decided to file for Chapter 7 bankruptcy. (*Id.* at 154, 167.)

At the close of testimony, the Bankruptcy Court took the matter under advisement and had the parties file additional briefs before issuing a Memorandum Opinion on May 18, 2020. (Doc. 8 at 9.) The Bankruptcy Court found in favor of Debtor on all counts. (Doc. 11-12.) It reasoned that Debtor did not incur the debt within 90 days of filing for bankruptcy because she accrued the legal fees years prior, and Aboud's legal representation was not "luxury goods or services," as necessary under 11 U.S.C. § 523(a)(2)(C)(i)(I). (*Id.* at 6–7.)

Additionally, the Bankruptcy Court concluded that Aboud had not presented any evidence that Debtor engaged in actual fraud or demonstrated an intent to deceive at any point in time. (*Id.* at 8–9.) It first rejected the argument that Debtor obtained Aboud's legal services through false pretenses, false representation, or actual fraud because Aboud had not adduced any evidence to support this conclusion. (*Id.* at 8.) Even if Aboud's allegations about Debtor intentionally diverting funds in the Divorce Stipulation were true, the Bankruptcy Court reasoned, "Aboud produced no evidence Debtor intended to divert proceeds at the time legal services were obtained from Aboud." (*Id.* at 9.) Next, the Bankruptcy Court considered whether, in entering into the Settlement Agreement, Debtor extended, renewed, or refinanced an existing debt through false pretenses, false representation, or actual fraud. (*Id.*) It found that Aboud had not proven by a preponderance of the evidence that Debtor intended to deceive Aboud by the mere fact that she filed for bankruptcy shortly after arbitration. (*Id.* at 9–10.) According to the Bankruptcy Court, Debtor's testimony regarding the circumstances surrounding the negotiations and Settlement Agreement was "credible and persuasive." (*Id.* at 10.) It reasoned "Debtor simply could have filed bankruptcy without proceeding with the fee arbitration if she never intended to pay." (*Id.*)

Finally, the Bankruptcy Court rejected Aboud's conversion claim. (*Id.* at 14.) It found that Aboud had not presented sufficient evidence that the funds were subject to his attorney's lien because none of the money was paid to Debtor. (*Id.* at 12.) Furthermore, even if the lien attached to those funds, the Bankruptcy Court concluded that Aboud had not shown Debtor was either willful or malicious in entering into the Divorce Stipulation.

(*Id.* at 14.) It found "[t]he Divorce Stipulation simply provided for payments by the Debtor's former husband to satisfy outstanding obligations owed by the Debtor to her current divorce counsel, his past due child support obligations, and his own debt secured by his former residence." (*Id.*)

Pursuant to 11 U.S.C. § 523(d), the Bankruptcy Court then considered whether there was substantial justification for Aboud's claims. (*Id.* at 14.) It found that there was neither a reasonable basis in law or fact for the claims under § 523(a)(2)(C)(i)(I) and § 523(a)(2)(A). (*Id.* at 15–16.) However, the Bankruptcy Court did not explicitly conclude that Aboud's § 523(a)(6) claim for conversion was not substantially justified; it simply did not discuss whether that claim was substantially justified at all.

The Bankruptcy Court awarded Debtor her attorney's fees in the amount of $30,332.50, having lowered it from the $32,430 that Debtor sought. (*Id.* at 16–17.)

On July 29, 2021, Aboud and Aboud, P.C. appealed the Bankruptcy Court's judgment. (Doc. 8.)

**II.       Standard of Appellate Review**

The Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). When a district court considers an appeal of a final judgment from the bankruptcy court, it reviews legal conclusions de novo. *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir. 1998). The district court accepts the bankruptcy court's factual findings unless they are clearly erroneous. *Star v. West*, 237 F.3d 1036, 1038 (9th Cir. 2001). It is not enough that the reviewing court would have weighed the evidence differently. *See United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000) (en banc). Rather, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old unrefrigerated dead fish." *Hayes v. Woodford*, 301 F.3d 1054, 1067 n.8 (9th Cir. 2002) (internal quotation omitted).

**III.      Analysis**

Appellant asserts that the Bankruptcy Court erred when it (1) concluded that Debtor did not incur a debt within 90 days of filing for bankruptcy, in violation of 11 U.S.C. §

523(a)(2)(C)(i)(I), when she signed the Settlement Agreement with Aboud less than a month before filing her petition; (2) concluded that Debtor did not convert Aboud's funds, in violation of 11 U.S.C. § 523(a)(6); (3) failed to consider whether Debtor engaged in actual fraud by diverting funds in the Divorce Stipulation; (4) concluded that Aboud's claim under § 523(a)(2)(A) lacked substantial justification; (5) awarded Debtor all her attorney's fees although it found substantial justification for Aboud's § 523(a)(6) claim; and (6) required Aboud to demonstrate substantial justification for *all* his claims to avoid an award of attorney's fees under 11 U.S.C. § 523(d). (Doc. 8 at 7.) Each of these arguments is addressed in turn.

### a. Debt for Luxury Goods or Services Incurred Within 90 Days of Bankruptcy

Under § 523(a)(2)(A) of the Bankruptcy Code, a debtor is not entitled to discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Subsection C goes on to state, "for the purposes of subparagraph (A) . . . consumer debts owed to a single creditor and aggregating more than $800 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable . . . ." *Id.* § 523(a)(2)(C)(i)(I).

"[T]he term 'luxury goods or services' does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor." *Id.* § 523(a)(2)(C)(ii)(II). The Bankruptcy Code does not further define "luxury goods or services," however, bankruptcy courts have concluded that legal fees for divorce proceedings do not fall within the meaning of "luxury goods or services" for purposes of § 523(a)(2)(C). *In re Vernon*, 192 B.R. 165, 170 (Bankr. N.D. Ill. 1996) ("Indeed, legal fees and expenses incurred during divorce proceedings do not generally qualify as 'luxury goods or services' within the meaning of § 523(a)(2)(C)."); *In re Shaw*, 294 B.R. 652, 655 (Bankr. W.D. Penn. 2003) ("(a) luxuries within the meaning of § 523(a)(2)(C), as a matter of law, are limited to things that constitute extravagances or self-indulgences . . . and (b) the

incurrence of indebtedness for legal services, at least in the instant matter if not practically in every case, does not constitute an extravagance or self-indulgence"). The Ninth Circuit has observed that the purpose behind § 523(a)(2)(C)'s exemption was "to address the problem of the debtor who goes on a spending spree by charging the limits on his credit cards and then requests discharge of this credit card debt in bankruptcy." *In re Eashai*, 87 F.3d 1082, 1092 (9th Cir. 1996).

Appellant has not established that the $27,000 debt to Aboud falls within the parameters of § 523(a)(2)(C)(i)(I). First, as the Bankruptcy Court concluded, Debtor incurred the debt for Aboud's legal services at the time Aboud provided and billed for his legal services back in 2017. This falls outside of the 90-day time frame because Debtor did not file for bankruptcy until May 2019.

Second, Appellant asks the Court to focus on the signing of the Settlement Agreement as the relevant time period. However, even if Debtor incurred a new debt or "an extension, renewal, or refinancing" of an existing debt by signing the post-arbitration Settlement Agreement with Aboud within 90 days of filing for bankruptcy, this debt is still not governed by § 523(a)(2)(C)(i)(I). Despite Appellant's argument, the statute requires more than "a *consumer debt* (for goods or services) be incurred within 90 days." (Doc. 13 at 7.) The Court must consider whether the consumer debt is for *luxury* goods or services. Appellant argues that the legal services here were luxury because they related to "post-decree enforcement matters not related to support obligations because Debtor was not awarded spousal maintenance . . . ." (*Id.* at 9.) Nonetheless, fees for legal services in such post-decree enforcement litigation do not differ significantly from the fees incurred in divorce proceedings that other courts have concluded are not the type of extravagance covered by § 523(a)(2)(C)(i)(I). Because legal services in post-decree enforcement litigation are not "luxury goods or services" covered by the statute, the Court will affirm the Bankruptcy Court's finding on the first claim under § 523(a)(2)(C)(i)(I).

### b. Willful and Malicious Injury

Section 523(a)(6) exempts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. §

523(a)(6). Appellant seeks to have the debt exempt from discharge under § 523(a)(6) because it argues Debtor committed the tort of conversion by diverting funds in her Divorce Stipulation.

"Although federal law determines the nondischargeability of a debt, state law governs the elements of a conversion respecting property." *In re Thiara*, 285 B.R. 420, 427 (9th Cir. BAP 2002). In Arizona, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mill v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005). However, "[t]o maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004). Moreover, an attorney's lien requires that there be some judgment in the client's favor to which the lien can attach. *Langerman Law Offices, P.A. v. Glen Eagles at Princess Resort, LLC*, 204 P.3d 1101, 1103 (Ariz. 2009).

A creditor, upon demonstrating the elements of conversion, must also show that such conversion was a willful and malicious injury under § 523(a)(6) by proving that the debtor acted with "wrongful intent." *In re Thiara*, 285 B.R. at 429 (quoting *Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035, 1037–39 (9th Cir. 2001)). The focus of the willfulness inquiry is on the debtor's actual knowledge, which can be gleaned from circumstantial evidence. *Id.* at 432. Thus, the "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *In re Su*, 290 F.3d 1140, 1142 (9th Cir. 2002); *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (holding an injury is willful if the debtor intends the consequences of her action and not merely the action itself). In the conversion context, "[p]roof of the debtor's knowledge that he or she is harming the secured creditor or the creditor's lien interest by converting the collateral establishes that the debtor either intended to inflict such injury or believed that such injury was substantially certain to occur, and thus meets the willfulness requirement of § 523(a)(6)." *In re Thiara*, 285 B.R. at 432–33.

Additionally, a finding that the injury is malicious requires showing "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Su*, 290 F.3d at 1146–47 (quoting *In re Jercich*, 238 F.3d 1202, 1209 (9th Cir. 2001)).

Here, Appellant has not shown that Debtor converted Aboud's funds because, as the Bankruptcy Court concluded, it is not clear that Aboud had a right to immediate possession of these proceeds at the time Debtor entered into the Divorce Stipulation. First, Debtor never received any proceeds under the terms of the Divorce Stipulation.

Second, it is not clear that Aboud's attorney's lien would have attached to any of the payments made under the Divorce Stipulation even if they had first gone directly through Debtor. These payments were made for child support arrears, home mortgage payments, and attorney's fees to Volpiano, Debtor's counsel after Aboud. Although it does not appear that courts in Arizona have explicitly considered the issue, other jurisdictions have concluded that attorney's charging liens do not attach to child support payments as a matter of public policy. *E.g.*, *In re Benbow*, 496 B.R. 605, 611–12 (Bankr. D. Colo. 2013) ("[T]he court held that child support payments are exempt from the attorney's charging lien on public policy grounds."); *Sue Davidson, P.C. v. Naranjo*, 904 P.2d 354, 358 (Wyo. 1995) ("[A]n attorney's charging lien . . . 'is not enforceable against child support payments.'"); *In re Bush*, 356 B.R. 28, 35 (Bankr. S.D. Cal. 2006) ("[T]he only apparent limitation is that the charging lien may not attach to funds owed as child support.").

Additionally, testimony at trial suggested that Debtor's ex-husband remained personally liable for the payments on the home mortgage because his name was still on the loan with Chase Bank, although their divorce decree allocated the mortgage debt to Debtor. (*See* Doc. 11-17 at 172–73.) And, as the Bankruptcy Court outlined, Debtor's ex-husband remained personally liable for these mortgages under the terms of the Divorce Stipulation.

Finally, the parties have not cited any authority, nor can the Court find any, that clarifies the priority of a former attorney's charging lien as compared to the fees for current representation. And, as the Bankruptcy Court observed, "the same state court that granted Aboud the attorney's lien also authorized the disbursement of proceeds in a manner

contrary to Aboud's asserted lien rights by entering the Divorce Order." (Doc. 11-12 at 13.) Thus, Appellant has not shown that Aboud's lien would have taken priority over Volpiano's fees for representation during the settlement negotiations that resulted in the Divorce Stipulation itself.

Moreover, even if Appellant can establish the elements of conversion, the Bankruptcy Court's factual finding that there was insufficient evidence to show the requisite intent to injure Aboud was not clearly erroneous. Although Debtor ostensibly knew of Aboud's attorney's lien, the Bankruptcy Court found that "no evidence proved that Debtor's 'input' was done intentionally and wrongfully to avoid Aboud's attorney's lien and to cause him injury without just cause or excuse." (Doc. 11-12 at 14 n.2.) For example, although Debtor acknowledged she had "input" in negotiations over the Divorce Stipulation, she testified that it was her ex-husband's idea to make some payments directly to creditors. (Doc. 9-17 at 131.) Furthermore, it is not clear that Debtor knew the terms of the Divorce Stipulation would harm Aboud by denying him fees because, as discussed above, Aboud's lien may not have attached to these payments.

For these reasons, the Court affirms the Bankruptcy Court's finding in favor of Debtor on the § 523(a)(6) claim.

### c. Debt Incurred Through Actual Fraud

Appellant next asserts that the Bankruptcy Court erred in failing to consider Aboud's allegation that Debtor engaged in actual fraud under § 523(a)(2)(A). (Doc. 8 at 15.) A debtor is not entitled to discharge of any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent *obtained by* . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A) (emphasis added). "To establish nondischargeability under § 523(a)(2)(A), a creditor must prove five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." *In re*

*Gugliuzza*, 852 F.3d 884, 888 (9th Cir. 2017) (quotation marks omitted). "The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 359 (2016). This inquiry, however, is time-limited and focuses on the point in time when the debtor incurred the debt or the creditor extended credit. *In re Boyajian*, 367 B.R. 138, 146–47 (B.A.P. 9th Cir. 2007), *aff'd* 564 F.3d 1088 (9th Cir. 2009).

Appellant asserts that the Bankruptcy Court erred by failing to consider Debtor's fraudulent actions in entering into the Divorce Stipulation and allegedly intentionally diverting funds away from Aboud in the Divorce Stipulation. (Doc. 8 at 16.) However, the Bankruptcy Court instead focused on whether Debtor fraudulently obtained Aboud's legal services, specifically because of the time-limited nature of the fraud inquiry. (*See* Doc. 11-12 at 8–9.) This Court will likewise not focus on whether Debtor engaged in false pretenses, a false representation, or actual fraud with regard to the Divorce Stipulation and distribution of funds outlined in that agreement. Debtor did not "obtain" or incur any obligation to Aboud as a result of the Divorce Stipulation, nor did the Divorce Stipulation relate to any extension or refinancing of an existing debt to Aboud. Debtor entered into the Divorce Stipulation on September 13, 2018, long after Aboud withdrew as counsel on December 20, 2017. And it was not until October 2018 that Debtor initiated fee arbitration proceedings, signing the Settlement Agreement with Aboud the following year on April 3, 2019. Therefore, although the Divorce Stipulation is relevant to Aboud's claim, the Court cannot undertake a nondischargeability analysis under § 523(a)(2)(A) with regard to the Divorce Stipulation because it is not linked to the time a debt was incurred, which is the focus of the exemption.

Second, Appellant argues that "Debtor engaged in false pretenses, a false representation, or actual fraud when she signed the Fee Arbitration [Settlement] Agreement a few weeks prior to filing bankruptcy." (Doc. 8 at 16.) However, Appellant has not established the elements of fraud with regard to the Fee Arbitration Settlement Agreement. Specifically, the Bankruptcy Court, after hearing testimony, concluded that there was no evidence that Debtor engaged in arbitration or entered into the Settlement Agreement with

the intent to deceive Aboud or even with the intent to file for bankruptcy.

For example, Debtor testified that she entered into negotiations with the intent to resolve the fee dispute with Aboud. She also testified that she was overwhelmed by the process and felt pressured by the lawyers in the room to sign the Settlement Agreement. As the Bankruptcy Court observed, had Debtor never intended to pay the Settlement Agreement at the time she signed it, she did not have to enter into fee arbitration to begin with. She could have—as she later did—filed for bankruptcy without going through the lengthy process of preparing for a hearing and participating in negotiations.

The Bankruptcy Court found Debtor's testimony regarding her intent credible. This finding is not clearly erroneous. If anything, the Bankruptcy Court was in a better position than this Court to judge the veracity of Debtor's testimony. In light of her testimony and the fact that Debtor was not obligated to arbitrate before filing for bankruptcy, the timing of Debtor's subsequent bankruptcy does not alone establish that she acted deceptively or fraudulently when she signed the Settlement Agreement with Aboud. Accordingly, the Court will affirm the Bankruptcy Court's ruling in favor of Debtor on Appellant's § 523(a)(2)(A) claim.

### d.  Award of Attorney's Fees

Appellant's remaining claims relate to the Bankruptcy Court's award of attorney's fees to Debtor. A district court reviews the bankruptcy court's decision to award attorney's fees for an abuse of discretion. *In re Montano*, 501 B.R. 96, 105 (9th Cir. BAP 2013). The district court first "determine[s] de novo whether the bankruptcy court identified the correct legal rule for application." *In re Daecharkhom*, 505 B.R. 898, 900 (9th Cir. BAP 2014). If the bankruptcy court applied the correct rule, the district court must "determine under the clearly erroneous standard whether [the bankruptcy court's] factual findings and its application of the facts to the relevant law were: (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *In re Montano*, 501 B.R. at 105.

Section 523(d) of the Bankruptcy Code states that if a creditor seeks to have their debt exempted from discharge under § 523(a)(2), "and such debt is discharged, the court

*shall* grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, *the proceeding* if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust." 11 U.S.C. § 523(d) (emphasis added). The creditor bears the burden of establishing there was substantial justification for his claim by demonstrating the claim had "a reasonable basis both in law and in fact." *In re Hunt*, 238 F.3d 1098, 1103 (9th Cir. 2001).

Appellant argues that the Bankruptcy Court erred by finding there was no substantial justification for Aboud's actual fraud claim under § 523(a)(2)(A) because the Supreme Court in *Husky* held that actual fraud "encompass[es] fraudulent conveyance schemes, even when those schemes do not involve a false representation." (Doc. 8 at 17 (quoting *Husky*, 578 U.S. at 359).) Assuming without deciding that one of Aboud's three claims was substantially justified, it is not clear that the Bankruptcy Court was required to limit Debtor's fees by, presumably, one-third. Appellant provides no authority, nor has this Court found any, to suggest that § 523(d)'s award of fees can be parsed out based on the number of individual claims. The statute's mandatory award of attorney's fees, absent substantial justification or special circumstances, refers to the fees for "the proceeding," not the individual claims. Thus, the Bankruptcy Court applied the correct law under § 523(d).

However, Appellant also argues that the Bankruptcy Court should have applied the special circumstances exception to deny fees "across the board." (*Id.* at 21.) Appellant states that the Bankruptcy Court's "unconscionable" ruling resulted in "a net loss of $60,000 on a $27,000 receivable." (*Id.*)

The meaning of special circumstances under § 523(d) "is not well defined." *In re Stine*, 254 B.R. 244, 251 (9th Cir. BAP 2000). The discretion to deny fees for special circumstances "is not 'a license to the bankruptcy judge to make decision[s] on idiosyncratic notions of equity, fair dealing, or family justice. The exception should be interpreted with reference to "traditional equitable principles."'" *Id.* (quoting *In re McCarthy*, 243 B.R. 203, 209 (1st Cir. BAP 2000)). "Whether special circumstances exist

is determined in the context of the totality of the circumstances." *In re Dizinno*, 559 B.R. 400, 412 (Bankr. M.D. Penn. 2016). Moreover, "§ 523(d) was intended to curb abusive practices by institutional creditors . . . ." *Id.* Special circumstances may exist where the creditor's claims involved provisions of the Bankruptcy Code that do not require fee shifting, or, in other words, claims brought under provisions besides § 523(a)(2). *See In re King*, 258 B.R. 786, 798 (Bankr. D. Mont. 2001) (finding fees should not be awarded under § 523(d) because creditor also brought a claim under §523(a)(6)); *see also In re Swenby*, 529 B.R. 705, 710–11 (Bankr. W.D. Wis. 2015) (finding fees should not be awarded because creditor also brought claims under § 523(a)(4) and (a)(6)).

The Court finds that special circumstances exist, and the Bankruptcy Court erred in deciding otherwise. Section 523(d)'s goal of curbing abusive practices by institutional creditors would not be furthered by requiring Appellant to pay $60,000 on a claim for an original $27,000 debt. Moreover, the complaint was not limited to claims under § 523(a)(2) but also alleged an exemption under § 523(a)(6). Accordingly, the Court will reverse the Bankruptcy Court's award of attorney's fees to Debtor.

### e. Attorney's Fees on Appeal

Debtor also makes the conclusory statement that she "should be awarded her fees and costs incurred on this Appeal, upon compliance with Federal Rules of Appellate Procedure 39, and Circuit Rules 39-1.1 & 39-1.6." (Doc. 12 at 18.)

Federal Rule of Appellate Procedure 39(a) states that, "unless the law provides or the court orders otherwise . . . if a judgment is affirmed, costs are taxed against the appellant." Fed. R. App. P. 39(a). Ninth Circuit Rule 39-1.1 requires an itemized bill of costs to be submitted and Ninth Circuit Rule 39-1.6(a) sets a 14-day deadline for filing a request for attorney's fees. Subsection (b) further requires a request for fees to

> be supported by a memorandum showing that the party seeking fees is legally entitled to them and must be accompanied by Form 9 or a document that contains substantially the same information, along with: (1) a detailed itemization of the tasks performed each date and the amount of time spent by each lawyer and paralegal on each task; (2) a showing that the hourly rates claimed are legally justified; and (3) an affidavit or declaration attesting to

the accuracy of the information. All applications must include a statement that sets forth the application's timeliness. The request must be filed separately from any cost bill.

Because Debtor has not complied with these rules, the Court will not address whether an award of attorney's fees for this appeal is appropriate.

**IV.     Conclusion**

For the foregoing reasons, **IT IS ORDERED** that the appeal is **DENIED IN PART AND GRANTED IN PART.** The Bankruptcy Court's award of attorney's fees to Debtor is **REVERSED**. The Bankruptcy Court's remaining findings are **AFFIRMED**. The Clerk of Court shall close this matter.

Dated this 28th day of November, 2022.

_____
Honorable Raner C. Collins
Senior United States District Judge